MINE HILL & S. H. R. CO. v. McCOACH, Collector of Internal Revenue.

(Circuit Court, E. D. Pennsylvania. January 2, 1912.)

No. 1,494.

INTERNAL REVENUE (§ 9*)—CORPORATIONS—RAILROADS UNDER LEASE—"ENGAGED IN BUSINESS."

Where complainant railroad company, after operating its railroad for a number of years, in 1896 leased its property and franchises for 999 years at a specified rent, and since that time merely maintained a corporate existence, received the rents, and distributed them among its stockholders, and only had an office and such employés as were necessary to maintain such corporate existence as required by the lease, and to receive and distribute the rent, it was not "engaged in business," within the corporation tax law of 1909, and was therefore not liable for corporation taxes thereunder, notwithstanding the lease provided for termination and recovery of the property in case of the lessee's default, etc.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. § 9.*

For other definitions, see Words and Phrases, vol. 3, pp. 2392–2394; vol. 8, pp. 7649–7651.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by the Mine Hill & Schuylkill Haven Railroad Company against William McCoach, Collector of Internal Revenue, to recover corporation taxes paid for the years 1909 and 1910. On rule for judgment for want of sufficient affidavit of defense. Rule absolute.

Eli Kirk Price and George Wharton Pepper, for plaintiff.

Jasper Yeates Brinton, Asst. U. S. Atty., and J. Whitaker Thompson, U. S. Atty., for defendant.

J. B. McPHERSON, District Judge. The only question presented by this rule is whether the plaintiff was actually "engaged in business" during the tax years of 1909 and 1910. If it was so engaged, it was subject to the corporation tax law of 1909, and the payments exacted for these years cannot be recovered. If it was not so engaged, the act of 1909 did not apply, and the payments should be refunded.

The business that the plaintiff was created to do was the construction and the operation of a railroad. The state of Pennsylvania gave it a charter in 1828 (P. L. 205), under which the road was built and for many years was operated. In 1896, however, the Philadelphia & Reading Railway Company leased the plaintiff's property and franchises for 999 years at a specified rent, and since that time the plaintiff has merely maintained a corporate existence, received the rents, and distributed them among its stockholders. In substance, it did nothing else in 1909 and 1910, as will appear, I think, by the following quotation from the collector's affidavit of defense:

"That the plaintiff corporation keeps and maintains an office for the transaction of its business at 119 South Fourth street, in the city of Philadelphia, and did keep and maintain said office during the years 1909 and 1910.

"That the plaintiff has continuously, since the date of the agreement between the plaintiff and the Philadelphia & Reading Railway Company, made the 31st day of December, 1896, set forth in plaintiff's statement of claim as 'Exhibit G,' maintained its corporate existence and organization by the annual election of a president and board of managers, and the said board of managers has annually since the said date elected a secretary and treasurer of the said corporation.

"That under the said agreement the plaintiff is obliged during the term thereof to maintain its corporate existence and organization, and at all times and from time to time during the continuance of the said term, when requested by the Philadelphia & Reading Railway Company, to put in force and exercise each and every of its corporate powers and do each and every corporate act necessary to enable the Philadelphia & Reading Railway Company to enjoy, avail itself of, and exercise every right, franchise, and privilege in respect of the use, management, maintenance, renewal, extension, alteration, or improvement of the premises demised, and the business to be there carried on by the said Philadelphia & Reading Railway Company.

"That the plaintiff, through its officers, receives annually from the Philadelphia & Reading Railway Company rental in a fixed sum sufficient to guarantee a reasonable dividend upon its capital stock.

"That, under its agreement with the Philadelphia & Reading Railway Company, it preserves the right and power of taking back for operation its said property unimpaired whenever the Philadelphia & Reading Railway Company shall violate the covenants of said agreement.

"That through its officers it receives annually sums of money as interest on deposits and maintains a contingent fund, from which it also receives annual sums as dividends.

"That the plaintiff, through its officers, made returns of its annual net income for the years ending December 31, 1909, and December 31, 1910, copies of which are hereto attached and marked Exhibits 'A' and 'B.'

"That, as appears by the said returns, it did lay out and expend therefrom during the years aforesaid certain amounts for the ordinary and necessary expenses of the maintenance and operation of the business and properties of the corporation; that is to say, salaries of its officers and clerks and the expense of maintaining its office and keeping up the activities of its corporate existence.

"That it has, during the years aforesaid, kept and maintained at its offices its stock books for the transfer of its capital stock. That during the said years its capital stock has been bought and sold upon the market, and the shares so bought and sold have been transferred upon its said stock books.

"That the plaintiff, although it has leased its railroad and other property mentioned in the said agreement, has therefore never gone out of business in connection with its property, nor disqualified itself from any activity under its charter in respect thereto."

Clearly, I think, the act of 1909 does not tax a corporation merely because it elects officers annually, keeps books for the transfer of its stock, and pays its clerks and its office expenses; nor even because it has capital stock and owns money in bank on which it receives the ordinary interest paid to depositors. It may have, or it may do, all this without being subject to the act, for the indispensable foundation of the tax is the doing of corporate business. The tax is not upon property, but is "a special excise tax with respect to the carrying on or doing business by such corporation"; and therefore, if no corporate business is done, no excise can be laid. It is not a decisive test of doing such business, I think, that the corporation may possess unused powers, which, if used, might mark it as engaged in the corporate activity it was chartered to perform. If it does not in fact use these powers, it does not do business during the period of disuse, although it may have the capacity to do it at some time thereafter. For example: It is urged by the government that the plaintiff was doing business in 1909 and 1910, because the lease to the Reading Railway Company contains the following paragraph:

"The Mine Hill Company shall and will, during the term hereby demised, maintain its corporate existence and organization, and at all times, and from time to time, during the continuance of the said term, when requested by the Railway Company, its successors or assigns, shall and will put in force and exercise each and every corporate power, and do each and every corporate act which the Mine Hill Company might now, or may at any time hereafter, lawfully put in force or exercise to enable the Railway Company to enjoy, avail itself of, and exercise every right, franchise, and privilege in respect of the use, management, maintenance, renewal, extension, alteration, or improvement of the premises hereby demised, or intended so to be, and of the business to be there carried on; the Railway Company agreeing to indemnify and save harmless the Mine Hill Company against all loss, expense, damage, or liability for such exercise of corporate powers or performance of corporate acts, when exercised or done at the request of the Railway Company."

The only corporate power under this paragraph that is referred to by the government is the power of eminent domain, and, if it be conceded for present purposes that such power may still be possessed by the plaintiff, there is no suggestion that it has been used since the lease was made, and especially there is no suggestion that it was used during the tax years in question. If it should never be used, is the plaintiff nevertheless "engaged in business" now, and will it be so en-

gaged throughout the whole term of the lease, merely because it holds unused power that the state has not permitted it formally to transfer?

The defendant points also to the sixth paragraph of the lease:

"That if the Railway Company shall make default in the payment of the rent hereby reserved, or in any of the payments herein covenanted to be made by it, for a period of thirty days after the same shall have become due and shall have been demanded from it in writing by the Mine Hill Company, or shall fail to keep harmless the Mine Hill Company, as herein covenanted, after notice, it shall and may be lawful for the Mine Hill Company to declare this lease forfeited and at an end, and to re-enter and repossess the whole of the demised premises as of its first and former estate; but such re-entry and repossession shall not relieve the Railway Company from liability to the Mine Hill Company, its successors or assigns, for all arrears of rent due and unpaid at the time, and for all damages resulting from the breach or breaches of covenant by the Railway Company."

But this is merely a contingent right to take back the property and operate it again. If the contingency should never happen, must it nevertheless be decided that the plaintiff is doing corporate business now, and will be doing corporate business hereafter for (say) 998 years from 1896, because there is a possibility that it may be obliged to retake possession at the end of that period, and operate the railroad for the remaining year of the term?

I am not considering the effect of tricks or devices to escape taxation by collusive transactions. This is a bona fide lease, made years before the act of 1909 was passed, and under it the plaintiff has in fact gone out of business by the direct permission of the state Legislature and is now living upon its income. Its life is continued, for a landlord must be alive; but it has no longer the power to operate a railroad—that being the only kind of corporate business it was created to transact—and, while it still retains one power and one contingent right, it has not exercised the power for 15 years, and may never exercise it, and the contingency has not yet happened, and may never happen. If the power or the right should be exercised hereafter, the government would not be foreclosed by this decision from asserting that the corporation was once more "engaged in business." For the present, it seems to be enough to say that the Reading Railway, and not the plaintiff, is doing the corporate business originally intrusted to the plaintiff, and presumably is also being taxed for carrying it on. It seems hardly possible that both corporations can be taxed in respect of transporting the same freight and the same passengers. In my opinion, there is no essential difference between this case and Zonne v. Minneapolis Syndicate, 220 U. S. 187, 31 Sup. Ct. 361, 55 L. Ed. 428.

The rule is hereby made absolute, and the clerk is directed to enter judgment in favor of the plaintiff for want of a sufficient affidavit of defense. (Exception to the defendant.)